Henry C. TYSON, Sr., Plaintiff–Appellant,

v.

JONES & LAUGHLIN STEEL CORP., Defendant–Appellee.

No. 87–2693.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1991.

Decided March 2, 1992.

H. Nasif Mahmoud, Washington, D.C., for Henry C. Tyson, Sr.

Henry C. Tyson, Sr., pro se.

Lawrence L. Summers, argued, Vedder, Price, Kaufman & Kammholz, Chicago, Ill., for Jones & Laughlin Steel Corp.

Before WOOD, Jr.,* POSNER, and KANNE, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Having worked for Jones & Laughlin Steel Corp. ("Company"), the defendant-appellee, and its predecessor since January 1960 and having progressed up the non-supervisory, promotion ladder in its electrical maintenance department, Henry C. Tyson, the plaintiff-appellant, applied for a supervisory position in June 1981. The Company denied his application, citing Tyson's poor work-record, volatility, inability to get along with co-workers, and lack of appropriate leadership abilities. Tyson

---

* Judge Wood, Jr. assumed senior status on January 16, 1992, after oral argument in this case.

subsequently filed suit in district court, April 15, 1982, claiming he had been denied a promotion because of his race in violation of Title VII of the Civil Rights Act of 1964. 42 U.S.C. §§ 2000e et seq.

By consent the matter was tried before Magistrate Judge Rodovich in 1984. After trial, the parties entered settlement negotiations, requested and received numerous extensions, but did not reach an agreement. On October 12, 1987, the magistrate judge entered his findings of fact and conclusions of law, and on October 14, 1987, judgment was entered in favor of the Company.

Tyson appealed, claiming the court erred in its findings of facts, conclusions of law, and the admission of numerous items of evidence. The Company responds that the appeal is frivolous, having been brought only to delay the ultimate judgment, and asks for sanctions under Fed.R.App.P. 38.

Tyson was employed by the Company's predecessor in January 1960 as a laborer at its Indiana Harbor Works in East Chicago, Indiana. Approximately one year later he was promoted to the electrical maintenance department, where he progressed from electrical helper to motor inspector and, ultimately, to motor repairman. This last position is the highest attainable without promotion to a supervisory position.

From November 1962 through the middle of 1981, when he applied for a position as acting supervisor, Tyson accumulated some 42 disciplinary notices and incident reports. The underlying conduct included (1) improper use of time cards, (2) failure to report for work, (3) sleeping on the job, (4) poor work performance, (5) being outside his assigned work area, (6) relaxing, eating, and reading newspapers on work time, (7) walking off his job without permission, (8) engaging in altercations, (9) refusing to do his assigned job, (10) insubordination to superiors, and (11) physically threatening other employees.

In mid-June 1981 Tyson applied to Kenneth W. Kiser, General Foreman of Mechanical and Electrical Maintenance at the mill, for the position of acting supervisor.

Kiser conveyed this request to Kenneth W. Buckley, Assistant General Supervisor, to Claude D. Dratwa, Area Supervisor of Electrical Maintenance, to Calvin E. Baxter, Assistant Superintendent for Maintenance, and to Marvin Skoronski, Mill Superintendent. All four of these supervisors considered that Tyson was not qualified to be a supervisor; thus, none recommended he be promoted to acting supervisor, and he was not.

Each of the four supervisors testified his decision was based on Tyson's record of disciplinary notices and reports and on direct, work-place interactions with him. Buckley considered Tyson volatile, belligerent, too confrontational with both employees and supervisors, and a poor worker. Dratwa considered him a poor worker, unable to get along with co-workers, and overly ready to engage in loud and threatening behavior. Baxter considered him volatile, unable either to direct subordinates or to communicate with supervisors, and as having too little self-control. Skoronski, in turn, considered him a poor worker and lacking the necessary temperament. These views of Tyson's temperament are confirmed by the magistrate judge's statement that "[b]y his general demeanor at trial and by statements contained in his testimony, Tyson confirmed that he is a confrontational individual and may address stressful situations in a threatening manner."

In 1980 and the first half of 1981, the Company employed 35 to 40 workers in the electrical maintenance group at the mill. Six, including Tyson, were black. Of these six black employees, three testified they never sought or were asked to serve in a supervisory position. One was recommended by Kiser, Buckley, Dratwa, and Baxter and asked to be a supervisor during 1980 and early 1981, but he declined. Another one either was asked to be or, at least, discussed the possibility of becoming a supervisor but declined.

Lastly, there was some testimony that Tyson had encountered "normal prejudice" [1] during the early 1960s. Tyson, him-

---

1. By quoting this phrase from the testimony of one of Tyson's witnesses we neither denote nor

self, offered no direct evidence of racial animus by Buckley, Dratwa, Baxter, or Skoronski, the Company supervisors directly involved in making the decision not to promote him. He admitted that the only supervisor with whom he had ever had "racial problems" was a former supervisor, Bill Metzen. Metzen, however, did not participate in the decision Tyson challenges as racially motivated.

Tyson's claim arises under Title VII, 42 U.S.C. §§ 2000e *et seq.* Thus, there is federal jurisdiction, and we have jurisdiction of this appeal under 28 U.S.C. § 1291.

Tyson timely filed his notice of appeal, but the appeal was almost immediately stayed because LTV Corp., including its subsidiary, Jones & Laughlin Steel Corp., had filed for bankruptcy. *See* 11 U.S.C. § 362. On March 22, 1990, the Bankruptcy Court for the Southern District of New York modified the automatic stay to permit this appeal to proceed. *See In re Fernstrom Storage and Van Co.*, 938 F.2d 731 (7th Cir.1991) (automatic stay may be modified to permit resumption of civil suit). We did not receive notice of the bankruptcy court's order from Tyson until May 7, 1990, and then it was only in response to our order for a status report.

Other delays were occasioned by Tyson's failure to conform to the established briefing schedule, which, consequently, was modified several times. His brief was finally filed *instanter* 51 days after the last due-date and 194 days after the date initially set. The Company, in turn, requested and received one extension of time. That brief was timely filed, and this appeal proceeded to oral argument. Tyson's attorney, however, failed to appear. Nonetheless, we proceed on the record and the briefs to the three issues Tyson raises in this appeal.

■ First, Tyson seeks reversal of a number of the court's findings of fact and conclusions of law. In particular he asserts the court erred in determining the credibility of witnesses and in weighing the evidence.

■ We review a district court's findings of fact and its conclusions of law, where those conclusions comprise application of law to fact, under the same standard. *David Berg and Co. v. Gatto International Trading Co.*, 884 F.2d 306, 309 (7th Cir.1989). Moreover, as is the converse of the case here, "a finding of intentional discrimination is a finding of fact." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985). The appropriate standard is the clearly erroneous standard of Fed.R.Civ.P. 52(a). *Daniels v. Essex Group, Inc.*, 937 F.2d 1264, 1268 (7th Cir. 1991); *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. We do not reweigh each picayune discrepancy raised by the appellant, and we do not "retry the case in order to test the credibility of the various witnesses who testified." *Daniels*, 937 F.2d at 1268. Proper application of Rule 52(a) requires deference to the district court's finding of fact, which can be found clearly erroneous only when " 'the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.' " *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511 (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746 (1948)). Where "the district court's account of the evidence is plausible in light of the record viewed in its entirety," we may not reverse merely because we, as the trier of fact, would have "weighed the evidence differently." *Id.* 470 U.S. at 574, 105 S.Ct. at 1511. "Where there are two permissible views of the evidence, the factfinder's choice between them *cannot be clearly erroneous.*" *Id.* (citations omitted; emphasis added). One further point: "This court has time and again recognized the discretion that a trial judge has in 'weighing the evidence, and choosing from among conflicting factual inferences * * * and he has the inherent right to disregard the testimony of any witness when he is satisfied that the witness is not telling the truth * * *.' " *Daniels*, 937 F.2d at 1268 (citing *Gianukos v. Loeb Rhoades & Co.*, 822 F.2d 648, 652–

imply that "normal" equates with "permissible."

53 (7th Cir.1987); quoting *Sun Life Assurance Co. of Canada v. Stacks*, 187 F.2d 17, 20 (7th Cir.1951); asterisks provided by the *Daniels* court).

■ Here Tyson asks us to do precisely that which we may not. He asks us to redetermine the credibility of the Company's witnesses and, presumably, his own, to reweigh the evidence, and, accordingly, to reverse the district court's findings-of-fact number 3, 5, 6, 8 through 12, and 15 through 18 and conclusions-of-law number 12 through 16. Tyson supports his credibility challenge by claiming the Company's witnesses were biased and that their testimony was imprecise or conflicting—conflicting, that is, with his view of his own witnesses' testimony. His challenge to the court's weighing of evidence relies only upon testimony he claims to have offered and upon self-serving claims of effective cross-examination. But these are all matters, absent an abuse of discretion, that are left to the trial court to resolve. Tyson offers no appropriate basis for our reviewing, let alone reversing, the court's credibility determinations, its weighing of evidence, any inference it drew, or any conclusion it reached. He cites no evidence nor can we find any that would support an appellate, finding that the court abused its discretion in determining credibility of witnesses, weighing the evidence, choosing among conflicting factual inferences, or disregarding untruthful testimony. The court did not abuse its discretion in these matters.

Furthermore, Tyson has cited no evidence or testimony in the record that leads us to "the definite and firm conviction that a mistake has been committed." *Anderson*, 470 U.S. at 573, 105 S.Ct. at 1511. Rather, our review of the entire record shows the court's findings of fact and conclusions of law are, at a minimum, plausible. Consequently, they are not clearly erroneous and must be affirmed.

■ Second, Tyson asserts the court gave improper weight to certain opinions of the Company's lay witnesses and, thus, failed to obey the commands of Fed.R.Evid. 701. In this quest Tyson bears a heavy burden. Whether his challenge is to the court's decision to admit testimonial evidence or to its weighing of that evidence, the standard of review is the same: abuse of discretion. *Daniels*, 937 F.2d at 1268; *Geitz v. Lindsey*, 893 F.2d 148, 150 (7th Cir.1990). Under this standard "the relevant question is not how the reviewing judges would have ruled if they had been considering the case in the first place, but rather whether *any* reasonable person could agree with the district court." *Geitz*, 893 F.2d at 150 (internal quotation marks and citations omitted; emphasis in *Geitz*).

■ Tyson's concern is that the Company's witnesses testified he was confrontational, volatile and hostile, whereas his own witnesses allegedly testified otherwise. Tyson does not explain why, under Rule 701 (which permits lay opinion-testimony if rationally based on personal perception and helpful in determining a fact in issue), it was error to admit and give weight to the Company's opinion-testimony but permissible—nay, preferable—to admit and give weight to his own lay witnesses' opinion-testimony. Nonetheless, he claims, "The Court errored in its acceptance of [the Company's witnesses'] said opinion in light of the overwhelming evidence to the contrary, that is, that Plaintiff[, Tyson,] stood up for himself like a true man when he was being abused or mistreated by supervision." But in arguing there was "overwhelming evidence ... that Plaintiff stood up for himself like a true man," Tyson admits the accuracy of both the challenged testimony and the weight given that testimony by the court.

Tyson has not cited any specific testimony in the record that he finds objectionable or any timely objection made at trial. Either of these failures can abruptly terminate appellate review. *John v. Barron*, 897 F.2d 1387, 1392–93 (7th Cir.), *cert. denied*, —— U.S. ——, 111 S.Ct. 69, 112 L.Ed.2d 43 (1990) (citing Fed.R.App.P. 28(a)(4)); *Zayre Corp. v. S.M. & R. Co.*, 882 F.2d 1145, 1150 (7th Cir.1989) (citing Fed. R.Evid. 103(a)(1)). He has made no showing that the court abused its discretion, erred prejudicially, or even erred either in

admitting the challenged testimony or in weighing the evidence. Furthermore, our review of the record finds no reversible error in admitting the testimony or weighing the evidence. The court did not abuse its discretion.

■ Third and last, Tyson asks us to hold that the district court incorrectly applied Fed.R.Evid. 1002 and 1003, the "best evidence" and "admissibility of duplicates" rules, and, thus, improperly admitted duplicates of numerous documents. He argues, in part, the court erred by failing to verify that the duplicates had not been altered and should have compared the duplicates of 27 deficiency notices regarding his work performance with the originals, but he cites no authority for this novel proposition. He claims some were unsigned, some were undated, and some should have no longer been in his file because of an alleged victory in a grievance proceeding. He also claims 41 of the Company's documents, including duplicates, admitted into evidence as Defendant's Exhibits A through NN, which actually adds to only 40 but constitutes *all* of the Company's exhibits, "were suspect because of the objections raised by counsel...."

As stated above, we review challenges to the admission of evidence under the abuse-of-discretion standard. *Geitz*, 893 F.2d at 150. In particular, it is the opponent of the evidence who bears the burden of showing that a genuine issue of authenticity exists. *United States v. Leight*, 818 F.2d 1297, 1305 (7th Cir.), *cert. denied*, 484 U.S. 958, 108 S.Ct. 356, 98 L.Ed.2d 381 (1987). Moreover, Fed.R.Evid. 103(a)(1) requires the opponent of admission to make a timely objection or motion to strike.

Initially, Tyson claims to have objected to introduction of the duplicates but does so without citing the record. This failure is sufficient reason to dismiss the claim. *John*, 897 F.2d at 1392–93; *see also Bonds v. Coca–Cola Co.*, 806 F.2d 1324, 1328 (7th Cir.1986). We need not, however, decide this claim on the basis of that failure, an issue not raised by the Company.

■ Quite simply, there is no merit in Tyson's claims. He does not specify which documents suffer from which of the various, alleged deficiencies or defects, and he does not show that any document is fatally flawed. The act of objecting at trial to the admission of evidence does not make that evidence "suspect," as Tyson claims; it certainly does not rise to a showing that a genuine issue of authenticity exists. Indeed, Tyson offers no colorable challenge under Fed.R.Evid. 1003 to the authenticity of any of the duplicates admitted into evidence. Likewise, he has not expressly or specifically challenged the accuracy of the contents of any duplicate; rather, he intimates all suffer some sort of nebulous fault, *en masse*. Without more we cannot find error in the application of Fed.R.Evid. 1002. There is no showing that the court abused its discretion, and our review of the record indicates it did not.

## SANCTIONS

Claiming Tyson's appeal is frivolous and was initiated only to delay the ultimate judgment, the Company seeks sanctions in the form of attorney's fees and costs under Fed.R.App.P. 38, which states, "If a court of appeals shall determine that an appeal is frivolous, it may award just damages and single or double costs to the appellee."

The determination whether to award Rule 38 sanctions is a two-step process. First, we must determine if the appeal is frivolous; second, we must determine if sanctions are appropriate. *Mays v. Chicago Sun–Times*, 865 F.2d 134, 138 (7th Cir.), *cert. denied*, 493 U.S. 900, 110 S.Ct. 259, 107 L.Ed.2d 209 (1989).

■ An appeal is frivolous where "the result is foreordained by the lack of substance to the appellant's arguments." *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 938 (7th Cir.1989) (en banc). In examining the substance of the appellant's arguments, we evaluate only the arguments that were actually made, not those that could have been made. *Hartz v. Friedman*, 919 F.2d 469, 475 (7th Cir.1990) (citing *Beverly Gravel, Inc. v. DiDomenico*, 908 F.2d 223, 225 (7th Cir. 1990)).

■ None of the three issues raised on Tyson's behalf have any merit; all are frivolous. We cite only the most glaring evidence, not all of the evidence, that the appeal is frivolous and that Tyson's attorney, H. Nassif Mahmoud, knew so.

First, given the standards of review for the issues raised on appeal—clearly erroneous regarding the court's findings of fact and conclusions of law and abuse of discretion regarding the credibility of witnesses, weight of the evidence, and admission of evidence—the arguments Mahmoud made on Tyson's behalf were destined to fail. These standards are deferential and difficult to meet, requiring careful citation of appropriate authority[2] and thorough documentation of facts in the record that show error. There is also a concern with whether error is prejudicial, because harmless error does not mandate reversal. Bare claims that the court erred, that one's own witnesses were more credible or contradicted the other party's, that the opponent's witnesses were imprecise, that cross-examination raised interesting issues, or that objections raised at trial made the evidence suspect do not suffice. Indeed, they are not even credible appellate challenges, but that is all Mahmoud offered.

Mahmoud gives short shrift to the standards of review. While acknowledging the existence of the clearly-erroneous standard by quoting Fed.R.Civ.P. 52(a), Mahmoud merely asserts that the court's findings of fact and conclusions of law are clearly erroneous but never develops a legal argument to that effect.[3] He cites no extrinsic, contradictory evidence in the record, and he makes no claim that any finding of the court is *internally* inconsistent. Additionally, nowhere does Mahmoud acknowledge, let alone apply, the abuse-of-discretion standard, although it controls review of the second and third appellate issues he raises (admission of evidence). Also, it is the standard of review for the claims that underlie the first appellate issue he raises: his challenge to the court's findings of fact and conclusions of law is based on claims that the court erred in determining credibility of witnesses and weight of the evidence. When an appellant has " 'no reasonable prospect of meeting the difficult standard of abuse of discretion' " or fails to acknowledge that standard, sanctions under Fed. R.App.P. 38 are appropriate. *Greening v. Morgan*, 953 F.2d 301, 306–07 (7th Cir. 1992) (quoting *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 110 S.Ct. 2447, 2462, 110 L.Ed.2d 359 (1990)).

Second, Mahmoud cites no controlling case-authority for any proposition of law espoused, although he does cite nine cases. None of the cases cited are from the Supreme Court or this circuit. Additionally, one is a state-court case from outside this circuit (but no state-law issues are raised, anyway); one is from a district court outside this circuit; and one is from the United States Customs Court. We often benefit by citing and utilizing decisions from courts other than our own, but, where there is controlling authority within this circuit, it must be cited. There is precedent within this circuit for the issues Mahmoud raised, but he did not cite it.

The case authority Mahmoud did cite comprises nothing more than headnotes, reiterated essentially verbatim from West's

---

**2.** In the absence of *supporting* authority a party may, nonetheless, press a point "by showing why it is sound despite a lack of supporting authority...." *Pelfresne v. Village of Williams Bay*, 917 F.2d 1017, 1023 (7th Cir.1990). This, of course, presupposes that the party expressly acknowledges the absence of supporting authority and the presence of controlling, contrary authority, if any.

**3.** The Court in *Anderson*, 470 U.S. at 575, 105 S.Ct. at 1512, stated:

When findings are based on determinations regarding the credibility of witnesses, [Fed. R.Civ.P.] Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said. See *Wainwright v. Witt*, 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985).... But when a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted by extrinsic evidence, that finding, if not internally inconsistent, can virtually never be clear error.

Reporter and the United States Code Annotated. That is not authority; rather, it is a publisher's interpretation of what the particular court stated. We cannot view these meager efforts as any sort of attempt to develop a legal argument for reversal. We view them instead as unmistakable indicia that the attorney considered the appeal frivolous and invested his resources accordingly.

Lastly, we note Mahmoud made no citation to the record for any fact alleged in his challenge to four of the court's twelve findings of fact and four of its five conclusions of law. He made no citation to the record at all in presenting his second and third issues. These were challenges to the admission of evidence and required an initial showing of timely objection or motion to strike. Thus, Mahmoud failed to offer a basis for reversal, courted forfeiture by failing to follow the direction of Fed.R.App.P. 28(a)(4), and invited dismissal for presumptively failing to comply with Fed.R.Evid. 103(a)(1).

Thus, the evidence shows the appeal is frivolous and that attorney Mahmoud knew it. Moreover, the following evidence along with that discussed above supports a finding that sanctions are appropriate.

Mahmoud did not timely notify this court that the bankruptcy stay had been modified, and he missed all deadlines set for submission of briefs. The required statement-of-facts in the brief does contain some citations to the record, but it also contains numerous purported facts without citation to the record despite the requirement that "no fact be stated ... unless supported by a reference to ... the record or the appendix." 7th Cir. Rule 28(d). Also, the statement of facts contains comment and argument, a further transgression of Circuit Rule 28(d). Furthermore, Mahmoud makes serious allegations about the trial court's integrity but offers no supporting evidence. He claims the trial court "blatantly" misread a document, that it suffered "from the same prejudice and skewed judgment" as the Company, and that the trial court had "the audacity to claim that a man who is black who stands up for himself could not

effectively perform the duties of a supervisor." Unsupported charges such as these implicate Fed.R.App.P. 46. *See In re Grimes*, 364 F.2d 654 (10th Cir.1966), *cert. denied*, 385 U.S. 1035, 87 S.Ct. 775, 17 L.Ed.2d 682 (1967) (attorney disbarred who charged state supreme court justices with wrongdoing and bribery without attempting to substantiate the accusations in any way). Lastly, Mahmoud failed to appear for oral argument or notify the court to that effect.

We conclude sanctions are appropriate in this case. Therefore, appellant's counsel, H. Nassif Mahmoud, shall file a brief within 15 days of the date of this decision, explaining why he (either individually or his firm, but not Tyson) should not pay damages consisting of the appellee's costs, attorney's fees, and other expenses for this appeal. 7th Cir. Rule 38 (effective February 1, 1992). Concurrently, the Company shall submit, within 15 days of the date of this decision, a statement of the attorney's fees, costs, and expenses reasonably incurred in this appeal. Mahmoud shall thereafter have 15 days to submit an additional brief, arguing whether the Company's submission is reasonable.

AFFIRMED WITH SANCTIONS.