**ZEIGE DISTRIBUTING COMPANY, INC., a Wisconsin Corporation, Plaintiff–Appellant,**

v.

**ALL KITCHENS, INC., a Delaware Corporation, Defendant– Appellee.**

**No. 95–1070.**

United States Court of Appeals, Seventh Circuit.

Argued May 16, 1995.

Decided Aug. 17, 1995.

Leonard W. Schulz (argued), Schulz Law Office, Big Bend, WI, for plaintiff-appellant.

Dan Conley (argued), Kathleen P. Browe, Quarles & Brady, Milwaukee, WI, for defendant-appellee.

Before EASTERBROOK and KANNE, Circuit Judges, and SHARP, District Judge.*

KANNE, Circuit Judge.

Zeige Distributing is a wholesale food distributor, peddling to restaurants groceries such as spices, flour, canned goods, eggs, cheese, milk, frozen food, and paper products. In 1992 Zeige Distributing decided to affiliate with a larger food distribution organization because doing so would give it such advantages as cash discounts on volume purchases and training material that would make it more profitable. Zeige Distributing approached All Kitchens, a group of food distributors that affiliated to achieve greater buying power, to explore affiliation. Steven Zeige, the son of Zeige Distributing founder William Zeige and the person responsible for running Zeige Distributing, contacted All Kitchens President Harry Reifschneider to express Zeige Distributing's interest in joining All Kitchens. Reifschneider told Steven Zeige that he would have All Kitchens' sales representative, Robert Oros, contact Zeige. Oros called Steven Zeige, and the two planned to meet to discuss a possible affiliation.

On the day of the scheduled meeting, June 9, 1992, Oros toured Zeige Distributing's office and warehouse and became familiar with Zeige Distributing's products and vendors. Later, Oros met with Steven Zeige, William Zeige (Steven's father), Christopher Zeige (Steven's son), and David Herbert, Zeige Distributing's office manager. At this meeting, Oros outlined the advantages of affiliating with All Kitchens, including training seminars, group buying meetings, and cash dis-

* The Honorable Allen Sharp, Chief Judge of the Northern District of Indiana, sitting by designa-

tion.

counts on volume purchases. Oros told the others that Zeige Distributing could expect to receive roughly $38,000 per year in rebates through affiliation with All Kitchens, though he did not explain to the Zeiges how he arrived at this figure.

After the meeting, Steven Zeige and Oros returned to Steven Zeige's office, where Oros presented him with an All Kitchens distributor agreement. Oros explained the agreement, and Steven Zeige signed it and tendered a check for $500.00, the amount of All Kitchens' membership fee. Oros did not sign the agreement because he did not have the authority to approve new members. In fact, All Kitchens President Reifschneider testified that this was not the usual process by which All Kitchens would recruit new members, that recruits almost never signed the agreement immediately.

The distributor agreement denominated Zeige Distributing as the "Master Distributor" and stated that the Master Distributorship covered a territory designated by an attached Exhibit "A." It also stated that, "upon receipt of this agreement and accompanying check," the All Kitchens headquarters would hold the agreement for fifteen days "pending approval by ALL KITCHENS' members in the surrounding territory, if any." Another relevant portion stated that the Master Distributorship was assigned to Zeige Distributing in exchange for $500.00 "payable with the execution of this agreement."

Oros told Steven Zeige that the only possible hurdle he saw to Zeige Distributing's becoming a member of All Kitchens was an objection from All Kitchens member Jack Lavanian, who owned R & S Meats, a business near Zeige Distributing. (Ultimately, Lavanian did not object.) Notably, however, there was no attached Exhibit "A" that designated Zeige Distributing's territory. Oros also advised Zeige that All Kitchens would need to complete a credit check on Zeige Distributing before All Kitchens could approve its application. Oros sent Zeige Distributing's application and check to All Kitchens' headquarters within twenty-four hours of his meeting with Zeige.

On June 17, 1992, Steven Zeige received a fax from All Kitchens requesting credit information. He supplied the requested information by fax the same day, then heard nothing else from All Kitchens for several weeks. He tried to call both Oros and Reifschneider, but, unable to reach them, left messages inquiring as to Zeige Distributing's status with All Kitchens. All Kitchens cashed Zeige Distributing's check on July 16, 1992.

Oros called Steven Zeige in mid-to-late July 1992 to explain that there was a seven day hold on all memberships because of a big deal transpiring in Florida. Then, in early August of 1992, someone from All Kitchens called Zeige Distributing to inform them that their application had been denied. All Kitchens subsequently refunded Zeige Distributing's $500.00, but Zeige Distributing never cashed the check.

## I. The District Court's Disposition of the Case

Zeige Distributing sued All Kitchens, claiming that All Kitchens had breached its contract to make Zeige Distributing a member distributor in the All Kitchens group. The parties agreed to try the case to the bench. At the close of Zeige Distributing's case All Kitchens moved for judgment pursuant to Rule 52(c), alleging that Zeige Distributing had failed to prove the existence of a contract and had not met its burden with respect to damages. The district court made numerous factual findings, including that there was no Exhibit "A," but was unable to decide conclusively whether Zeige Distributing had failed to demonstrate the existence of a contract.

The district court did decide that Oros lacked the authority to enter into an agreement on behalf of All Kitchens. Judge Warren described Oros' actions as inviting Zeige Distributing to strike a deal with All Kitchens, and Zeige Distributing's subsequent signing of the agreement and tendering of a check as a contractual offer that All Kitchens could accept or reject.

The court initially denied All Kitchens' motion, though, because it wanted to hear more evidence about whether All Kitchens' holding of Zeige Distributing's check beyond the fif-

teen days and after the credit check had been completed, combined with All Kitchens' ultimate cashing of Zeige Distributing's check, amounted to an acceptance of Zeige Distributing's offer. All Kitchens then presented Reifschneider's testimony as to what transpired at All Kitchens after Zeige Distributing tendered its application and check.

Reifschneider, the person ultimately responsible for approving new All Kitchens members, testified that, during the period in question, it was All Kitchens' policy to cash all checks it received immediately after receiving them. The person who opened the mail, not Reifschneider, was responsible for processing the checks for deposit. All Kitchens adopted this procedure in order to comply with generally accepted accounting procedures. However, this process was not followed with respect to Zeige Distributing's check. All Kitchens Vice–President Robert Seeman participates in the decision whether to accept new All Kitchens members, and he deliberately held Zeige Distributing's check and two others precisely because he feared cashing them would indicate that All Kitchens had accepted the contracts Zeige Distributing and the others offered. When Reifschneider learned that Seeman was holding the checks, he ordered their immediate deposit. Reifschneider testified that he was not afraid that depositing the checks would indicate acceptance of a contract and that, at the time All Kitchens deposited Zeige Distributing's check, he had not decided whether to accept Zeige Distributing as a member of All Kitchens.

After hearing this evidence, the district court granted All Kitchens' Rule 52(c) motion. Zeige Distributing appeals.

## II. Analysis

■ Our examination of the district court's grant of defendant's motion for Judgment on Partial Findings is governed by FED.R.CIV.P. 52(c). The court's factual determinations are reviewed under the clearly erroneous standard, and we must give due regard to the opportunity of the trial court to judge the credibility of the witnesses. FED. R.CIV.P. 52(a) & (c). We may not re-judge the credibility of the witnesses, and we may

reverse only if, after reviewing the record, we are left with the firm belief that the district court made a mistake. *Tyson v. Jones & Laughlin Steel Corp.*, 958 F.2d 756, 759–60 (7th Cir.1992) (Citations omitted). We must affirm if the district court's determination is plausible in light of the record in its entirety. *Id.* (Citations omitted).

■ In Wisconsin, our source for the law in this diversity case, in order for acceptance of a contract to occur, there must be a meeting of the minds, a factual condition that can be demonstrated by word or deed. *Household Utils., Inc. v. Andrews Co.*, 71 Wis.2d 17, 29, 236 N.W.2d 663, 669 (Wis.Ct. App.1976). A written agreement may be effective even if both parties have not signed it if the parties otherwise demonstrate their intent to have a contract. *See Consolidated Papers, Inc. v. Dorr–Oliver, Inc.*, 153 Wis.2d 589, 451 N.W.2d 456, 461 (Wis.Ct.App.1989) (concluding that a party had entered into an agreement not signed by both parties by virtue of a party's failure to contest the other party's oral acceptance).

Zeige Distributing does not challenge the district court's finding that no contract was formed when Oros met with Steven Zeige, described the advantages of All Kitchens to him, and collected Zeige Distributing's application and fee. Rather, the thrust of Zeige Distributing's argument is that, at some point after Steven Zeige met with Oros, All Kitchens accepted Zeige Distributing's offer.

■ More precisely, Zeige Distributing claims that the company's June 9 meeting with Oros established two requirements for becoming a member of All Kitchens: that no member of All Kitchens in the surrounding territory object within fifteen days and that Zeige Distributing pass a credit check. Zeige Distributing argues that these requirements were satisfied in that Jack Levanian did not object to Zeige Distributing's becoming a member, All Kitchens did not notify Zeige Distributing of any other objections within the fifteen day period, and Zeige Distributing supplied all the information that All Kitchens requested for a credit check. Moreover, All Kitchens cashed Zeige Distributing's check one month after Zeige Distrib-

uting supplied its credit information. Cashing the check, Zeige Distributing argues, would indicate to a reasonable business person that All Kitchens had agreed to the deal.

In order to make its case more plausible, Zeige Distributing posits that Reifschneider's subsequent rejection of its offer was an attempt to cancel the already-accepted contract offer motivated by All Kitchens' desire ·to sign Reinhardt Foods, a larger food distributor from Wisconsin that promised more lucrative returns for All Kitchens than did Zeige Distributing. Zeige Distributing believes that Reifschneider did not want to risk losing Reinhardt by also including Zeige Distributing. Under this scenario, Zeige Distributing claims that it was All Kitchens' best bet in Wisconsin until it became clear to Reifschneider that Reinhardt Foods would join All Kitchens. At that point, Zeige Distributing's membership in All Kitchens was expendable.

Zeige Distributing spins an interesting yarn of corporate manipulation and greed. Unfortunately for it, the district court didn't buy it. To begin with, one of Zeige Distributing's theories, that a contract arose when All Kitchens failed to notify Zeige Distributing of objections in fifteen days, contradicts the district court's decision, which Zeige Distributing does not appeal, that Zeige Distributing's application was merely an offer to contract, not the completion of a contract in itself. For Zeige Distributing's theory to carry the day, the court would have had to find that All Kitchens' representative, Oros, agreed to a conditional arrangement with Zeige Distributing whereby All Kitchens' performance was conditioned on Zeige Distributing's passing a credit check and on the absence of objections within fifteen days from other All Kitchens members. *See Kocinski v. Home Ins. Co.*, 147 Wis.2d 728, 433 N.W.2d 654, 659 (Wis.Ct.App.1988) (noting that parties must agree that a contract will arise on the satisfaction of a condition in order for the fulfilling of the alleged condition to be meaningful). Yet, the district court found just the opposite, that Oros had not agreed to anything with Zeige Distributing, and that, in fact, he had no authority to do so.

Perhaps more compelling, however, there was never any Exhibit "A" from which a reasonable person could discern the extent of Zeige Distributing's territory. Zeige Distributing may have speculated that its territory would generally cover the area in which it presently distributed food. However, no one from All Kitchens who had any authority ever represented to Zeige Distributing that Zeige Distributing would, if approved, cover any particular area. At the initial meeting, Oros offered his opinion that Jack Lavanian of R & S Meats in Racine posed the only possible objection, an opinion that might have suggested something about Zeige Distributing's territory had Oros been in a position of authority. Yet, as we discussed above, Oros was not in a position of authority; he could not bind All Kitchens to anything. Moreover, the mere mention of one possible black ball presents at best a nebulous outline of what the agreement advanced as a key portion of the distributorship—the territory. It was not reasonable for Zeige Distributing to rely on Oros' opinion as a commitment on the part of All Kitchens for a particular territory.

We do not believe, as Zeige Distributing suggests, that the missing Exhibit "A"—the territory—is a term that a court could supply based upon the other evidence of agreement. It is not like a missing price term, easily deducible from the market rate. Rather, it invoked a crucial commitment on the part of the members of the All Kitchens consortium. The provision for objections from current members in surrounding territories demonstrated the All Kitchens members' desire not to be in close competition with their compatriots. The territory provision was so apparently important to All Kitchens' scheme that it would not be reasonable to infer from an ambiguous act on All Kitchens' part that, despite no agreement on distribution territory, All Kitchens had constructively accepted Zeige Distributing into the All Kitchens family. The missing territory provision left too big a gap between the parties for the deposit of Zeige Distributing's check, without an accompanying express acceptance of Zeige Distributing's application, to fill. We do not

believe that the evidence objectively shows All Kitchens' intent to have a contract.

The judgment of the district court is AF-FIRMED, and All Kitchens' motion for sanctions is DENIED.