Harry G. JOHN, et al.,
Plaintiffs–Appellants,

v.

Honorable Michael J. BARRON, et al.,
Defendants–Appellees.

Harry G. JOHN, et al.,
Plaintiffs–Appellants,

v.

Donald A. GALLAGHER, et al.,
Defendants–Appellees.

Nos. 89–1027, 89–1112, 89–1848
and 89–2510.

United States Court of Appeals,
Seventh Circuit.

Submitted Feb. 13, 1990.*

Decided March 8, 1990.

---

* After preliminary examination of the briefs, the Court notified the parties that it had tentatively concluded that oral argument would not be helpful to the Court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." Plaintiffs-appel-

lants have filed such a statement and requested oral argument. Upon consideration of that statement, the briefs, and the record, the request for oral argument is denied and the appeal is submitted on the briefs and record.

Thomas J. Jeffers, Jr., Montrose, Cal., for plaintiffs-appellants.

James H. McDermott, Asst. Atty. Gen., Wisconsin Dept. of Justice, Madison, Wis., Janice A. Rhodes, Stephen E. Kravit, Kravit, Waisbren & Debruin, Charles D. Clausen, Friebert, Finerty & St. John, Milwaukee, Wis., for defendants-appellees.

Before CUMMINGS, WOOD, Jr. and COFFEY, Circuit Judges.

CUMMINGS, Circuit Judge.

These are consolidated appeals arising from state court litigation involving the removal of a trustee from a charitable trust.

## I. BACKGROUND

In 1946 Harry John established De Rance, Inc. as a foundation to fund various religious, charitable, and educational programs. By 1954 John had turned over to De Rance much of his inheritance, which consisted of a 47% stake in the Miller Brewing Company. Over the years, De Rance contributed over $100 million to primarily Catholic charities out of income from its investments.

De Rance had three trustees: Harry John, his now ex-wife Erica John, and Dr. Donald Gallagher. Both Erica and Gallagher are defendants-appellees. Having been warned that De Rance was teetering on bankruptcy, they filed suit in Wisconsin state court on October 5, 1984, in order to remove John as an officer, director, and trustee. They alleged that the foundation, at John's direction, had spent nearly $100 million of its capital in less than one year to fulfill John's dream of creating a worldwide Catholic television network and to fund deep-sea treasure hunts.

After a lengthy bench trial, Circuit Court Judge Michael Barron, another defendant-appellee, issued an oral decision on August 21, 1986, which removed John as trustee and director of De Rance. Judge Barron found that John's misconduct included securities fraud, tax fraud, perjury, self-dealing, conflicts of interest, and waste. Judge Barron also dismissed John's conspiracy counterclaim against Erica, Gallagher, and others seeking to oust Harry John from De Rance. The Wisconsin Court of Appeals affirmed Judge Barron's decision, see *John v. John*, 450 N.W.2d 795 (Wis.Ct.App.1989), and the Wisconsin Supreme Court denied a petition for review. See *John v. John*, No. 88–1507, —— N.W.2d —— (Wis. Feb. 20, 1990).

Following the Wisconsin trial court decision, John filed three lawsuits in district court. These suits are the subject of this consolidated appeal. In *John v. Barron*, No. 89–1112 (*Barron I*), John contests the imposition of sanctions under Rule 11 of the Federal Rules of Civil Procedure, arising out of allegations in a complaint filed pursuant to 42 U.S.C. § 1983 which he later dismissed. The next two appeals arise out of a subsequently filed § 1983 case against the same defendants. In *John v. Barron*, No. 89–1027 (*Barron II*), John appeals from an order dismissing the state court judge as a defendant, and in *John v. Gallagher*, No. 89–2510 (*Gallagher I*), John appeals from a subsequent order granting summary judgment to the remaining defendants. In *John v. Gallagher*, No. 89–1848 (*Gallagher II*), John appeals from an order dismissing his complaint in a diversity suit against Erica and Gallagher under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## II. ANALYSIS

### Rule 11 Sanctions

In *Barron I*, No. 89–1112, Judge Warren sanctioned both John and his attorney, Thomas Jeffers, $1000 each and imposed joint and several liability for the defendants' attorneys' fees pursuant to Rule 11 due to the scandalous nature of the allegations in the complaint and their failure to make a reasonable inquiry into the facts. Judge Warren then transferred the determination of the amount of attorneys' fees to Judge Evans, before whom Rule 11 sanctions were pending in a nearly identical suit brought by John. (See *Barron II*). John's

complaint in the subsequent case has now been dismissed, but Judge Evans has not yet determined the amount of attorneys' fees.

## A. Appellate Jurisdiction

 The first issue in *Barron I* is whether this court has subject matter jurisdiction to consider the awarding of attorneys' fees pursuant to Rule 11 when the amount of the fees has yet to be quantified by the district court. An award of attorneys' fees which does not fix the amount of the award or specify a formula allowing the amount to be computed is not a final decision within the meaning of 28 U.S.C. § 1291. *Lac Courte Oreilles Chippewa Ind. v. Wisconsin*, 829 F.2d 601, 603 (7th Cir.1987); *Vandenplas v. City of Muskego*, 797 F.2d 425, 427–428 (7th Cir.1986); *Gilles v. Burton Constr. Co.*, 736 F.2d 1142, 1145–1146 (7th Cir.1984); *Hershinow v. Bonamarte*, 735 F.2d 264, 266–267 (7th Cir. 1984); see also *In re Ronco, Inc.*, 838 F.2d 212, 213–214 n. 1 (7th Cir.1988). There is an exception when the order awarding fees in an amount not yet determined can be consolidated on appeal with a final order. See *Lac Courte*, 829 F.2d at 603. That exception does not apply in this case because John does not appeal from any final order regarding the underlying complaint. Judge Warren's order does not conclusively determine the disputed question of attorneys' fees, and that portion of the appeal must be dismissed.

## B. Reasonable Inquiry into the Facts

 Judge Warren's order imposing monetary sanctions is a final appealable order, and we must determine whether the district court properly imposed sanctions on John and Jeffers in the amount of $1000 each. Judge Warren found that they failed to make reasonable inquiries into the facts underlying the complaint before filing suit. We agree.

 The standard for reviewing decisions under Rule 11 is now settled in this circuit. In *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir.1989) (*en banc*), we adopted a deferential standard in reviewing a district court's decision to impose sanctions under Rule 11. *Id.* at 933. Because the trial court has an intimate familiarity with the relevant proceedings, its decision whether counsel has conducted the kind of inquiry required by Rule 11 and taken a position reasonable in light of the facts and governing law is reviewable only where there has been an abuse of discretion. *Id.* (quoting *R.K. Harp Inv. Corp. v. McQuade*, 825 F.2d 1101, 1103 (7th Cir.1987)); *Melrose v. Shearson/American Express*, 898 F.2d 1209, 1214–15 (7th Cir.1990).

Judge Warren was disturbed by the outlandish nature of the complaint, which challenged the credibility of the entire Wisconsin legal system.[1] He ordered John and Jeffers to submit a documented summary of the factual and legal inquiry made by each prior to the filing of the lawsuit. John said that he filed the suit at the advice of his attorney. Jeffers said that his investigation consisted of sifting through the state court proceeding, review-

1. In his order imposing Rule 11 sanctions, Judge Warren noted the following allegations in the complaint:

(1) Erica John, Donald Gallagher, Thomas Cannon, William Cannon, retired Judge Robert Cannon and Judge Barron held secret meetings, whereat Judge Barron agreed, prior to the filing of *John v. John*, that he would sign an *ex parte* order removing Harry John from De Rance. "This was done to destroy HARRY G. JOHN financially and professionally, to destroy his reputation and completely ruin forever his standing in the community (community here, meaning the world, for he was a world figure)." [Complaint at para. 4].

(2) By prior arrangement and as part of the conspiracy, the County Clerk's Office assigned the *John v. John* case to Judge Barron. [Complaint at para. 5].

(3) Judge Barron arranged for the *John v. John* case to be assigned to him so that he could rule against John "no matter what the evidence showed." [Complaint at 27].

(4) Harry John could not appeal the state court proceedings because the Wisconsin "Court of Appeals is very close to JUDGE MICHAEL J. BARRON and their offices are in the same building, and within a few feet of each other, and the Court of Appeals will do what it can to protect JUDGE BARRONS (sic) and his order." [Complaint at 41].

ing the financial history of De Rance, and talking to people who knew the parties. Regarding Judge Barron, Jeffers stated that he spoke with two Circuit Court judges who said that they knew Judge Barron would rule against John. The role of the Circuit Court Clerk's Office was revealed to Jeffers by the fact that the clerk held up the assignment of more than 50 cases so that Erica's and Gallagher's case could be assigned to Judge Barron. Jeffers also stated, "[t]he above information is the tip of the iceberg. There is other material which is confidential, however, it will be available at the time of trial." *John v. Barron*, No. 87 C 953 order at 6 (E.D.Wis. Dec. 15, 1988) (*Barron I* order) (quoting Jeffers' summary at 26).

Judge Warren found that John and Jeffers provided no documentation of the alleged conspiratorial meetings and agreements, the role of the Clerk's office, or the futility of presenting a case to the Wisconsin Court of Appeals. John's statement that he relied on evidence known by Jeffers conflicted with his sworn statement accompanying the complaint regarding his personal knowledge of the facts. Jeffers' "rambling submission was hardly responsive to the court order and raised further unsupported allegations." *Barron I* order at 7. Judge Warren called the complaint "one of the most outlandish and blatant violations of Rule 11 that this court has seen" including "allegations made by *pro se* plaintiffs." *Id.* at 8. Our review of the record supports Judge Warren's conclusion. The district court did not abuse its discretion in imposing sanctions on both John and Jeffers.

### *Judicial Immunity*

■ The issue in *Barron II*, No. 89–1027, is whether the doctrine of judicial immunity shields a state court judge from liability for damages for alleged depriva-

tion of John's constitutional rights to a fair trial as guaranteed by the due process clause of the Fourteenth Amendment.[2] John claims that Judge Barron violated his civil rights by conspiring with others to remove him as a trustee of De Rance before and during the state court trial. John argues that judicial immunity is inapplicable to this case because Judge Barron entered the conspiracy prior to the time the state court had personal jurisdiction over him.

■ Judges are not liable in civil actions for their judicial acts unless they have acted in the clear absence of all jurisdiction. *Stump v. Sparkman*, 435 U.S. 349, 356–357, 98 S.Ct. 1099, 1104–1105, 55 L.Ed.2d 331 (1978) (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 20 L.Ed. 646 (1871)); *Dellenbach v. Letsinger*, 889 F.2d 755, 758 (7th Cir.1989); *Eades v. Sterlinske*, 810 F.2d 723, 725 (7th Cir.), *cert. denied*, 484 U.S. 847, 108 S.Ct. 143, 98 L.Ed.2d 99. A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority. *Stump*, 435 U.S. at 356–357, 98 S.Ct. at 1104–1105 (quoting *Bradley*, 80 U.S. (13 Wall.) at 351); *Dellenbach*, 889 F.2d at 758. Furthermore, a judge is absolutely immune for his judicial acts even if his exercise of authority is flawed by the commission of grave procedural errors. *Stump*, 435 U.S. at 359, 98 S.Ct. at 1106; *Dellenbach*, 889 F.2d at 759. Judge Barron will be entitled to absolute judicial immunity if his actions meet a two-part test: first, the acts must be within the judge's jurisdiction; second, these acts must be performed in the judge's judicial capacity. *Id.* (citing *Stump*, 435 U.S. at 356, 360, 98 S.Ct. at 1104–1105, 1106–1107; *Bradley*, 80 U.S. (13 Wall.) at 351–352)).

■ To support his argument that Judge Barron acted in the absence of jurisdiction,

---

**2.** After dismissing the claim for damages against Judge Barron, Judge Evans denied John's request for injunctive relief based on the theory of abstention. John has waived this issue on appeal by failing to address abstention in his appellate brief. *Beard v. Whitley County REMC*, 840 F.2d 405, 408–409 (7th Cir.1988) (Fed.R.

App.P. 28(a)(4) mandates that an appellant must present in its brief the issues to the appellate court that the appellant desires to litigate).

John also raises several other issues which this court need not address due to our disposition of this case.

John relies on *Rankin v. Howard*, 633 F.2d 844 (9th Cir.), *cert. denied*, 451 U.S. 939, 101 S.Ct. 2020, 68 L.Ed.2d 326 in which the court held that a judge's private, prior agreement to decide in favor of one party was not a judicial act giving rise to judicial immunity. *Id.* at 848–849. In *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986), the Ninth Circuit overruled *Rankin*, holding that a judge is entitled to immunity even if there was no personal jurisdiction over the complaining party at the time the judge entered the conspiracy. *Ashelman*, 793 F.2d at 1078. Judicial immunity is a defense so long as the judge's ultimate acts are judicial actions taken within the court's subject matter jurisdiction. *Id.; New Alaska Development Corp. v. Guetschow*, 869 F.2d 1298, 1302 (9th Cir.1989). We agree with the reasoning of the *Ashelman* court, because under *Rankin*, judges, on mere allegations of conspiracy, could be hauled into court and made to defend their judicial acts, the precise result that judicial immunity was designed to avoid. *Ashelman*, 793 F.2d at 1077.

Judge Barron's acts during the pendency of the case were within the subject matter jurisdiction of a circuit court of the State of Wisconsin. The Wisconsin Constitution provides that "the circuit court shall have original jurisdiction in all matters civil. . . ." Wis. Const., Art. 7, § 8. As a judge of the circuit court, Judge Barron did not act "in the clear absence of jurisdiction" with respect to the events that occurred during the pendency of Erica's and Gallagher's civil case.

 Next we must determine whether Judge Barron performed these acts within his judicial capacity. The factors which determine whether an act by a judge is a judicial one relate to whether the act is normally performed by a judge and whether the parties dealt with the judge in his judicial capacity. *Stump*, 435 U.S. at 362, 98 S.Ct. at 1107–1108; *Dellenbach*, 889 F.2d at 760; *Eades*, 810 F.2d at 725–726. Unlike a judge who fires a court employee, see *Forrester v. White*, 484 U.S. 219, 229, 108 S.Ct. 538, 545, 98 L.Ed.2d 555 (1988), a judge who assigns a case, consid-

ers pretrial matters, and renders a decision acts well within his or her judicial capacity. Because Judge Barron acted within the scope of his jurisdiction, and the acts were within his judicial capacity, he is entitled to absolute judicial immunity. Further John should have addressed any complaint he had regarding Judge Barron's handling of the case to the state appellate court. See *Forrester*, 484 U.S. at 227, 108 S.Ct. at 544 ("[m]ost judicial mistakes or wrongs are open to correction through ordinary mechanisms for review, which are largely free of the harmful side-effects inevitably associated with exposing judges to personal liability."). Therefore the district court properly dismissed Judge Barron from the case under Rule 12(b)(6). See *Williams v. Faulkner*, 837 F.2d 304, 307 n. 5 (7th Cir.), *aff'd sub nom. Neitzke v. Williams*, 491 U.S. ——, 109 S.Ct. 1827, 104 L.Ed.2d 338 (Rule 12(b)(6) is applicable when the defendants are clearly immune from suit).

### *Adequacy of Appellant's Brief*

 The only issue we address in *Gallagher I*, No. 89–2510, and *Gallagher II*, No. 89–1848, is whether we should dismiss these appeals due to the inadequacy of the appellants' briefs. In *Gallagher I*, John argues that the district court erred in granting summary judgment to the defendants other than Judge Barron. The argument section of Harry John's brief consists of two brief paragraphs which read as follows:

> Plaintiff Appellant should be permitted to maintain this action because Judge Barron entered into a conspiracy with the other defendants to deprive Mr. John of his constitutional rights and acted under color of state law.

> In the case of *Dennis v. Sparks[,]* 449 U.S. 24 [101 S.Ct. 183, 66 L.Ed.2d 185 (1980)], the court ruled that private persons, jointly engaged with the state officials in a challenged action, are acting "under color of law" for purposes of 1983 actions, and the case could proceed even though the judge was immune and the judge could be required to testify in the proceedings.

These two paragraphs are followed by one page entitled "Proof of Conspiracy" which includes a lengthy quote from a book, and a separate reference to one case, all without commentary. Defendants have moved that this appeal be dismissed due to the inadequacy of the brief.

In *Gallagher II*, John argues that he was denied a hearing on a dismissal and was not given the opportunity to amend his complaint. The argument section of John's brief on appeal reads as follows:

> Should the Plaintiff be able to maintain this suit for the removal of Donald Gallagher and Erica John?
>
> Plaintiff states that he should be able to maintain the action against them on the following theories:
>
> 1. That he can maintain the suit on the basic principle of equity as the defendants maintain a majority vote as directors, and have so voted. Donald Gallagher cannot be removed as a trustee because a trustee is merely a voting member and has no power to bind the corporation other than changing the articles and bylaws. Section 776.32 of Wisconsin General Laws also gives that power. The state court was wrong in removing Harry John as a trustee for this same reason.
>
> 2. He can maintain the action as the Founder and sole contributor of the funds to De Rance.
>
> 3. He is the holder of the power of appointment and as such holder can sue to protect it.
>
> 4. It is possible that he could act as a private attorney general where the Wisconsin Attorney General will not act.
>
> 5. The action could be re-instated with a stay order pending a favorable ruling on [*Gallagher I*] and then have this action joined with that action.

The entire 'Argument' section of this brief consists of one page which fails to cite a statute, rule, case or any authority, except for an incorrect reference to a Wisconsin statute. The defendants have moved to dismiss the appeal as frivolous, citing *Brooks v. Allison Div. of General Motors Corp.*, 874 F.2d 489, 490 (7th Cir.1989).

Rule 28(a)(4) of the Federal Rules of Appellate Procedure requires that the appellant's argument "contain the contentions of the appellant with respect to the issues presented, and the reasons therefor, with citations to the authorities, statutes and parts of the record relied on." Rule 28(a)(4) plainly requires more than a one page argument unsupported by any authority. See *Bob Willow Motors, Inc. v. General Motors Corp.*, 872 F.2d 788, 795 (7th Cir.1989); *Sere v. Board of Trustees*, 852 F.2d 285, 287–288 (7th Cir.1988). An appellant must not only raise issues in his brief, he must present them in a professional fashion. See *FTC v. World Travel Vacation Brokers, Inc.*, 861 F.2d 1020, 1025–1026 (7th Cir.1988). This court is not obligated to research and construct legal arguments open to parties, especially when they are represented by counsel as in this case. See *Zelazny v. Lyng*, 853 F.2d 540, 542 n. 1 (7th Cir.1988) (quoting *Beard v. Whitley County REMC*, 840 F.2d 405, 408 (7th Cir. 1988)); *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir.), *cert. denied*, 479 U.S. 1056, 107 S.Ct. 933, 93 L.Ed.2d 984. In *Pearce v. Sullivan*, 871 F.2d 61 (7th Cir.1989), we warned that one day the penalty for a perfunctory appeal could be dismissal of the appeal. *Id.* at 64. That day has arrived. Appellant counsel Thomas Jeffers' conclusory remarks without any attempt at argument do not comply with the strictures of Rule 28(a)(4). Due to the perfunctory and frivolous nature of these appeals, they must be dismissed. See *Crowley Cutlery Co. v. United States*, 849 F.2d 273, 276–278 (7th Cir.1988).

We are deeply troubled by the performance of Jeffers in this appeal. The results in all of these cases were obvious and Jeffers' arguments were wholly without merit. Not only did he violate Rule 28(a)(4), but in all four cases he failed to comply with Federal Rule of Appellate Procedure 28(a)(3) and (e), which require specific references to the record on appeal. Further, Jeffers constantly misrepresented the facts, and injected argument into his discussions of the facts. In *Barron II*, Jeffers relied on *Rankin*, a case which has

been overruled and repeatedly rejected. See *Ashelman,* 793 F.2d at 1077–1078; *Dykes v. Hosemann,* 776 F.2d 942, 946 (11th Cir.1985) *(en banc);* *Holloway v. Walker,* 765 F.2d 517, 522–523 (5th Cir.), *cert. denied,* 474 U.S. 1037, 106 S.Ct. 605, 88 L.Ed.2d 583 (1985). As a result of his performance, we are sending a copy of this decision to the appropriate attorney disciplinary committee in Jeffers' home state.[3]

## III. CONCLUSION

In summary, we affirm in part and dismiss in part for lack of appellate jurisdiction the appeal in *Barron I,* No. 89–1112. In *Barron II,* No. 89–1027, we affirm the decision of the district court dismissing Judge Barron. In *Gallagher I,* No. 89–2510, and in *Gallagher II,* No. 89–1848, we dismiss due to the frivolous nature of the appeals.

---

**3.** Defendants' motion for sanctions under Rule 38 of the Federal Rules of Appellate Procedure is denied in lieu of this action.