**Gerard N. HAAS, Jr., Plaintiff,**

v.

**State of WISCONSIN, Wisconsin Supreme Court—Office of Judicial Education, David H. Haas, Racine County, Racine County Sheriff's Department, William L. Mc Reynolds, John Does—Unknown Racine County Deputy Sheriffs, City of Racine, Racine Police Department, Richard Polzien, David Spenner, John Does—Unknown City of Racine Police Officers, City of Racine Municipal Court, and Robert S. Michelson, Defendants.**

No. 02–C–0198.

United States District Court, E.D. Wisconsin.

Jan. 16, 2003.

Robert Bernhoft, Christopher Ertl, Milwaukee, WI, for Plaintiff.

David C. Rice, Madison, WI, Raymond J. Pollen, Milwaukee, WI, W. Scott Lewis, Racine, WI, for Defendants.

### DECISION AND ORDER

ADELMAN, District Judge.

Plaintiff Gerard N. Haas brings this claim under 42 U.S.C. § 1983 alleging that

defendants violated his federal constitutional rights including rights guaranteed by the First, Fourth, Sixth, Eighth, Ninth, Thirteenth and Fourteenth Amendments. He also brings various state law claims including abuse of process, false arrest, false imprisonment, trespass and conversion. All of plaintiff's claims stem from his allegation that he was wrongfully incarcerated for failing to comply with several municipal court judgments imposing civil forfeitures. Plaintiff names as defendants the City and County of Racine, the State of Wisconsin, and various departments and employees of these governmental entities. He seeks damages and injunctive and declaratory relief.

Based on Eleventh Amendment immunity, I previously dismissed plaintiff's claims against the State and state agencies, as well as his federal law claims for damages and all of his state law claims against state officials in their official capacity. I also dismissed plaintiff's claims against defendant Ronni G. Jones because of her recent death. In addition, plaintiff voluntarily withdrew his claims under the First, Sixth, Eighth and Ninth Amendments.

Pursuant to Fed.R.Civ.P. 12(b)(6), the remaining defendants now move to dismiss plaintiff's remaining claims.

## I. FACTUAL ALLEGATIONS

On several occasions, plaintiff was cited for violating ordinances of the City of Racine. Instead of paying deposits or appearing in court, plaintiff ignored the citations. As a result, the municipal court entered default judgments against him. When he failed to comply with the judgments or attempt to explain why he could not do so, the court ordered his incarceration.

Plaintiff complains of a number of incidents, all of which involve arrests or attempted arrests of him pursuant to the municipal court's orders. On May 12, 1998, he was detained on eight outstanding municipal warrants until his brother paid $603.90 to cover the unpaid forfeitures. On August 13, 1999, police officers went to his mother's house seeking to arrest him for non-payment of other default judgments. On February 10, 2000, plaintiff was arrested pursuant to an arrest warrant and taken to the Racine County Jail based on non-payment of approximately $3,100 in outstanding judgments. On March 24, 2000, plaintiff was served with papers stating that he had violated various municipal ordinances and failed to pay the resulting judgments and would be imprisoned for approximately five years unless he paid approximately $76,000 in forfeitures. On January 30, 2002, plaintiff was detained until his brother paid $2,536 in outstanding judgments.

Plaintiff alleges that as a result of the foregoing incidents, he suffers a "constant threat of imminent and unlawful arrest" and that he has suffered "great humiliation, embarrassment, mental suffering, loss of liberty and property, deprivation of constitutional and statutory rights, as well as loss of reputation." (R. 1 ¶ 31.)

## II. SUBJECT MATTER JURISDICTION

■ Plaintiff asserts that I have jurisdiction over his federal claims based on 28 U.S.C. § 1331 and supplemental jurisdiction over his state law claims based on 28 U.S.C. § 1367. However, I conclude that I am deprived of jurisdiction based on the *Rooker–Feldman* doctrine. *See Dist. of Columbia Court of Appeals v. Feldman,* 460 U.S. 462, 482, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983); *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 415–16, 44 S.Ct. 149, 68 L.Ed. 362 (1923). Although the parties have not raised this issue, I raise it sua sponte because federal courts are re-

quired to jealously guard their own jurisdiction. *See Lewis v. Anderson,* 308 F.3d 768, 771–72 (7th Cir.2002). In doing so, I assume that all of plaintiff's allegations are true and construe the complaint in the light most favorable to him. *See Am. Fed'n of Gov't Employees, Local 2119 v. Cohen,* 171 F.3d 460, 465 (7th Cir.1999) (citing Fed.R.Civ.P. 12(b)(1)).

The *Rooker–Feldman* doctrine deprives a lower federal court of jurisdiction to review a state court decision. *Lewis,* 308 F.3d at 772. The doctrine extends to claims seeking direct review of a state-court decision and claims "inextricably intertwined with the state-court [decision] such that the federal claim succeeds only to the extent that the state court wrongly decided the issue before it." *Id.* (internal citations and quotation marks omitted); *accord GASH Assocs. v. Vill. of Rosemont,* 995 F.2d 726, 727 (7th Cir.1993) (stating that the doctrine bars federal suit by a plaintiff who "objects to the outcome of a judicial proceeding and file[s] a separate suit to get around it"). The doctrine bars review even if I am convinced that the state court's decision was unconstitutional or otherwise contrary to law. *Rizzo v. Sheahan,* 266 F.3d 705, 713 (7th Cir.2001); *Remer v. Burlington Area Sch. Dist.,* 205 F.3d 990, 996 (7th Cir.2000).

In determining whether the doctrine applies, "[t]he pivotal question ... is 'whether the injury alleged by the federal plaintiff resulted from the state court judgment itself or is distinct from that judgment.' " *Lewis,* 308 F.3d at 772 (quoting *Rizzo,* 266 F.3d at 713). In *Homola v. McNamara,* 59 F.3d 647, 649 (7th Cir.1995), a state court entered a default judgment against the plaintiff Homola for violating a building permit ordinance and ordered that city officials conduct inspections of Homola's property. Homola refused to comply with the court's orders, and the court eventually held him in contempt and ordered his arrest. *Id.* In a series of federal court actions, Homola sued the city, the city attorney who had prosecuted him, the judge was had ordered his arrest and the city official charged with carrying out the judge's inspection order. *Id.* Homola sought damages for having been sued, arrested and jailed. *Id.* The Seventh Circuit held that federal court review of Homola's claims was barred by the *Rooker–Feldman* doctrine because his claims rested entirely on the alleged unlawfulness of the state court's orders. *Id.* at 650–51. The Seventh Circuit further stated that, had Homola sued the arresting officers, such claims would also have been barred because the alleged injuries also resulted solely from the court's order that Homola be arrested. *Id.* at 650.

The present case is indistinguishable from *Homola.* Plaintiff alleges that as a result of Municipal Court Judge Robert Michelson's orders, he was arrested, incarcerated and forced to pay forfeitures. His alleged injuries all resulted from the judge's orders. He complains of no injuries that are distinct from those resulting from the court's orders. Plaintiff alleges, for example, that the arresting officers violated his Fourth Amendment rights, but he bases this claim solely on the fact that the officers executed Judge Michelson's orders. *Cf. Nesses v. Shepard,* 68 F.3d 1003, 1005 (7th Cir.1995).

The *Rooker–Feldman* doctrine would not bar federal review if, during the state court proceedings, plaintiff had no reasonable opportunity to raise the claims that he now raises. *Brokaw v. Weaver,* 305 F.3d 660, 668 (7th Cir.2002). However, plaintiff could have raised the claims he raises here in municipal court, *see* Wis. Stat. §§ 800.02(1), 800.04, 800.095, 800.115(2), or he could have appealed the municipal court judgments, *id.* § 800.14. Indeed, in at least one instance plaintiff did, in fact, raise

some of his present claims in state court. *State of Wis. ex rel. Haas v. McReynolds*, 252 Wis.2d 133, 136–39, 142–44, 643 N.W.2d 771 (2002) (recounting history of prior proceedings and declining to reach the merits of plaintiff's claims).

Because plaintiff's suit seeks review by a federal court of the orders of a state court, the *Rooker–Feldman* doctrine deprives me of jurisdiction. However, in the event that I am mistaken on the question of subject matter jurisdiction, in the interest of judicial economy, I will also address defendants' motions to dismiss.

## III. RULE 12(b)(6) MOTIONS

### A. Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Dismissal of an action under such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir.1997); *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.*, 184 F.3d 623, 627 (7th Cir.1999). The facts alleged in the complaint are assumed to be true, and all facts, and all reasonable inferences flowing from those facts, are read in the light most favorable to the plaintiff. *Bethlehem Steel Corp. v. Bush*, 918 F.2d 1323, 1326 (7th Cir.1990).

### B. Judicial and Quasi–Judicial Immunity

#### 1. Defendant Michelson

■ Judges are absolutely immune from suits for damages, *Mireles v. Waco*,

502 U.S. 9, 10, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991), including actions raising constitutional challenges under 42 U.S.C. § 1983, *John v. Barron*, 897 F.2d 1387, 1391–92 (7th Cir.1990). There are two exceptions: (1) where the suit challenges an action that is not judicial in nature, and (2) where the judge has acted "in the absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. at 10, 112 S.Ct. 286. Plaintiff argues that his challenge falls into the latter category.

When addressing the scope of a court's jurisdiction in light of immunity, I consider only the court's subject matter jurisdiction, *Crenshaw v. Dywan*, 34 F.Supp.2d 707, 711 (N.D.Ind.1999) (citing *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir.1986) (en banc), *cited with approval in John v. Barron*, 897 F.2d 1387, 1392 (7th Cir. 1990)), and construe it broadly, *Stump v. Sparkman*, 435 U.S. 349, 356, 98 S.Ct. 1099, 55 L.Ed.2d 331 (1978). Courts draw a distinction between judicial acts taken "in the absence of all jurisdiction," for which the judge is not immune from suit, and actions taken "in excess" of jurisdiction, for which the judge is immune. *Bradley v. Fisher*, 80 U.S. 335, 339, 13 Wall. 335, 20 L.Ed. 646 (1871). For example,

> [I]f a probate judge, with jurisdiction over only wills and estates, should try a criminal case, he would be acting in the clear absence of jurisdiction and would not be immune from liability for his action; on the other hand, if a judge of a criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.

*Briscoe v. LaHue*, 663 F.2d 713, 722 n. 5 (7th Cir.1981), *aff'd*, 460 U.S. 325, 103 S.Ct. 1108, 75 L.Ed.2d 96 (1983) (quoting *Stump*, 435 U.S. at 357, 98 S.Ct. 1099 n. 7)

(internal quotation marks omitted); *accord Duty v. City of Springdale,* 42 F.3d 460, 462 (8th Cir.1994) (per curiam) ("[A] judge acts in excess of jurisdiction if the act complained of is within his general power of jurisdiction but is not authorized because of certain circumstances[; whereas, there] is a clear absence of jurisdiction when a court of limited jurisdiction attempts to adjudicate a case outside of its jurisdiction ....") (internal citation and quotation marks omitted). Errors, even grave ones, and even when made with malicious intent, do not deprive a judge of absolute immunity. *John,* 897 F.2d at 1391 (citing *Stump,* 435 U.S. at 356–57, 98 S.Ct. 1099).

Here, plaintiff was cited for violating municipal ordinances. Judge Michelson entered judgments, issued warrants and summonses, and ordered plaintiff's arrest in connection with such violations. In Wisconsin, municipal court judges have jurisdiction over municipal ordinance violations. Wis. Const. art. VII, § 14; Wis. Stat. § 755.045(1). State law empowers them to enter default judgments, Wis. Stat. § 800.04(2m), issue warrants and summonses, *id.* § 800.095(1) and, in some cases, order incarceration for failure to comply, *id.* § 800.095(b)1. Thus, Judge Michelson's actions were not taken in the clear absence of jurisdiction. *See Duty,* 42 F.3d at 463 (holding that municipal court judge did not act in clear absence of jurisdiction when he ordered plaintiff's arrest for failing to pay fines for violation of municipal ordinances because state law authorized municipal court judges to issue arrest warrants in connection with municipal ordinance violations). Even if Judge Michelson acted unlawfully, his actions

were, at most, in excess of his jurisdiction.[1] Thus, he is immune from suit for damages.

**2. Law Enforcement Officer Defendants**

██ Law enforcement officers who carry out a judge's order are immune from suits that challenge nothing more than the fact that the order was executed. *Henry v. Farmer City State Bank,* 808 F.2d 1228, 1238–39 (7th Cir.1986) (granting quasi-judicial immunity to law enforcement officers enforcing foreclosure judgment). If, however, the plaintiff challenges officer conduct that is not authorized by the judge's order, the officers are not immune. *Richman v. Sheahan,* 270 F.3d 430, 436–37 (7th Cir.2001) (holding that officers were not entitled to quasi-judicial immunity in action alleging that they used excessive force in carrying out judge's order).

As discussed in the previous section, plaintiff here complains only that the officers and deputies executed the court orders, not that they did anything improper independent of the execution of the orders. Thus, the police officer and sheriff's deputy defendants are immune from suit for damages.

**C. Failure to State a Claim**

**1. Plaintiff's Claims**

Plaintiff challenges the legality of Judge Michelson's orders in two respects. First, he argues that both state law and due process require that a summons be served before a court can issue a judgment and that because he was not served with a summons, the judgments against him were invalid. Second, he argues that his incarceration was unlawful because (1) the state

---

1. In addition, plaintiff's arguments about Judge Michelson's jurisdiction are largely based on the alleged absence of personal jurisdiction over plaintiff, not subject matter jurisdiction. As previously discussed, only subject matter jurisdiction is relevant in determining immunity.

statute permitting incarceration does not apply to default judgments; (2) the statute applies only to violations of ordinances with statutory counterparts;[2] unlike the ordinances he was adjudged to have violated; (3) his incarceration constituted imprisonment for non-payment of a debt in violation of the Wisconsin Constitution; and (4) his incarceration constituted involuntary servitude or peonage in violation of the United States Constitution.[3] Defendants argue that plaintiff fails to state a claim under any of the foregoing theories.

## 2. Wisconsin Law Governing Municipal Courts and the Enforcement of Municipal Ordinances

An analysis of plaintiff's claims requires a discussion of the nature of municipal courts and municipal ordinances in Wisconsin and the evolution in the manner in which municipal ordinances are enforced. Actions to enforce municipal ordinances in Wisconsin are civil in nature, not criminal. Wis. Stat. §§ 66.0114, 800.02(1). The only remedy for violation of a municipal ordinance in municipal court is a forfeiture. *See id.* § 800.02(1). Both municipal and circuit courts have jurisdiction over actions alleging the violation of municipal ordinances. *See* Wis. Stat. § 755.045(1). Municipal courts' jurisdiction is limited to such actions, Wis. Const. Art. VII, § 14; Wis. Stat. § 755.045(1), whereas circuit courts have broader jurisdiction, Wis. Const. Art. VII, § 2.

Before 1975, when a party was cited for a municipal ordinance violation, the municipality had to commence an action against the defendant in municipal or circuit court in order to recover a forfeiture or even to obtain a stipulation for payment of the prescribed deposit. Wis. Stat. § 66.12(1)(b) (1973) (current version as amended at § 66.0113 and scattered sections of chapters 778 and 800). A municipality could not avoid filing a formal action even if the defendant admitted to the violation and paid the forfeiture. *See id.; 1975 Assembly Bill 201, Analysis by the Legislative Reference Bureau* 1 (on file with the Legislative Reference Bureau ("LRB")).[4]

In order to relieve this burden, in 1975 the legislature passed Chapter 201, thereafter codified as Wis. Stat. § 66.119 (1975) (current version as amended at § 66.0113 and scattered sections of chapters 778 and 800). This provision allowed a municipality to use citations to collect forfeitures for non-traffic offenses without issuing a summons or warrant if the defendant appeared in court or paid the prescribed deposit. *Id.* If the defendant did neither, the municipality then had to file an action by serving the defendant with a summons. *Id.* The citation would serve as the complaint. *Id.*

However, in 1988, the legislature passed 1987 Wis. Act 389 which obviated the need to file a summons in order to obtain a judgment for violation of a municipal ordi-

**2.** In Wisconsin, municipalities may enact ordinances that prohibit the same conduct that a state statute prohibits. Such ordinances are said to have "statutory counterparts." *See* Wis. Stat. § 800.0001; *see also City of Janesville v. Wiskia*, 97 Wis.2d 473, 482–83, 293 N.W.2d 522 (1980) (discussing the relationship between the prosecution of municipal ordinances and their statutory counterparts).

**3.** In his complaint, he also alleges violations of the Fourth Amendment, abuse of process, false arrest, false imprisonment, trespass and

conversion. Because I conclude that the arrests and incarcerations were lawful, these claims must fail. I do not address them separately.

**4.** All cited LRB analyses can be found on file with the LRB. The Wisconsin Supreme Court has stated that LRB analyses are significant in determining legislative intent. *Milwaukee v. Kilgore*, 193 Wis.2d 168, 184, 532 N.W.2d 690 (1995).

nance. This legislation authorized a municipal court to enter a default judgment if the defendant received a citation that met certain requirements and failed to appear in court or enter a deposit. *See* Wis. Stat. § 800.04(2m); *see also 1987 Senate Bill 379, Analysis by the LRB*. However, due to an apparent oversight, the same power to enter default judgments was not granted to circuit courts. *See* Letter from J. Denis Moran, Director of State Courts, to James Fullin, Judicial Council Executive Secretary 1–2 (Nov. 1, 1990) (on file with the LRB) ("Municipal courts were granted the authority by 1987 Act 389 to take DJ's at initial appearance where the defendant fails to appear and fails to make a deposit. S. 800.04(2m). Apparently by oversight the provision was not made applicable to ordinance cases heard in circuit court. . . . Renee Randall of my office spoke with Pam Russell, the Legislative Council staffperson [sic] who worked on Act 389, and she has no recollection of any intent to give municipal courts more authority than circuit courts. She thinks the issue was simply never addressed.").

1987 Wis. Act 389 also created procedures for a municipal court to follow in enforcing a judgment; these procedures still apply today. In municipal court, if the defendant fails to comply with the judgment by paying the forfeiture, the court "shall issue a warrant to arrest the defendant and bring him or her before the court or a summons ordering the defendant to appear in court, or both." Wis. Stat. § 800.095(1). If the defendant fails to appear, the court can, among other things, order that the defendant "be imprisoned until the forfeiture, assessments, surcharge, and costs are paid, except that the defendant reduces the amount owed at a rate of at least $25 for each day of imprisonment." *Id.* § 800.095(4)(b)1. If, however, the court determines that the defendant's failure to pay is for good cause or

due to indigence, the court cannot order imprisonment. *Id.* § 800.095(4)(b).

Recognizing the disparity in power to enter default judgments between municipal and circuit courts, the legislature in 1992 enacted 1991 Wis. Act 128, which amended then § 66.119 to give circuit courts the same ability as municipal courts to enter default judgments where a defendant fails to appear in court or enter a deposit. *See* Wis. Stat. § 66.119(1)(b)7d (1992) (current version as amended at Wis. Stat. § 66.0113); *see also 1991 Assembly Bill 363, Analysis by the LRB* 1 (explaining that the bill was intended to make the procedure in circuit court match the procedure in municipal courts; "Under this bill, if the person fails to make a cash deposit and then fails to appear in circuit court for a municipal ordinance violation, the circuit court is given the option[ ] of entering a plea of no contest for the person and issuing a judgment for the forfeiture . . . .").

### 3. Analysis of Plaintiff's Claims

#### a. Is a summons required?

##### i. State law does not require a summons.

■ Plaintiff argues that the judgments entered against him were invalid under state law because the municipal court did not commence actions against him by serving summonses. However, under state law, no summons was required.

Plaintiff cites Wis. Stat. § 800.01(1) which governs the initiation of proceedings in municipal courts and states, "personal jurisdiction . . . is obtained over a defendant when the defendant . . . [i]s served with a summons and complaint or citation." Plaintiff argues that this language means that a defendant must receive both a summons and either a complaint or citation. However, the language of the stat-

ute and its legislative history demonstrate that plaintiff's argument is without merit.

The statute treats a summons and a citation as alternative methods of providing process. Wis. Stat. § 800.01(2) ("If a *summons or citation* is personally served, the law enforcement officer or municipal employee serving the *summons or citation* shall ....") (emphasis added); *id.* § 800.01(3) ("If the action is commenced by a citation ..."); *id.* § 800.04(2m) ("Upon proof of personal service of the *summons or citation* under s. 801.01(1), or upon proof of service of the *summons or citation* under 801.11(1)(b), the court may enter a default judgment by reason of the failure of a defendant to respond to *a citation* under s. 800.02(2)(a) *or a summons* under 800.02(4).") (emphasis added). In addition, the chapter's prescribed citation form informs defendants that if they fail to appear or pay, a default judgment may be entered and makes no mention of a summons preceding any such judgment. *Id.* § 800.02(2)(a)9. Finally, requiring a summons would serve no purpose because the citation form contains the same information that a summons would contain and more. *Compare id.* § 800.02(2)(a) *to id.* § 800.02(4)(a). Thus, considering the chapter as a whole, I conclude that it does not require service of a summons in order for a court to enter a default judgment. *Accord State ex rel. Hendricks v. Circuit Court,* 1990 WL 118276, at *1, 157 Wis.2d 263, 459 N.W.2d 260 (Wis.App.1990) (unpublished disposition) (interpreting Wis. Stat. § 800.01(1) and reaching the same conclusion).

Legislative history also supports this conclusion. As discussed above, in passing 1987 Wis. Act 389, the legislature intended to permit municipal courts to enter default judgments without requiring municipalities to issue summonses first. *See 1987 Senate Bill 379, Analysis by the LRB* 1–2 (explaining that under the bill, "upon proof of service of the summons or citation, the court may enter a default judgment ...."); *see also 1991 Assembly Bill 363, Analysis by the LRB* 1 (on file with the LRB) (discussing 1987 Wis. Act 389).

Plaintiff cites several pieces of legislative history from 1974 and 1975 regarding the enactment of what is now § 66.0113 as evidence that a summons is always required. I agree that, as originally enacted, § 66.0113 required more than a citation in order for a court to enter a default judgment. However, as discussed above, state law has changed since then. The authority cited by plaintiff does not show that a summons is required today. In fact, plaintiff's use of legislative history is not only unpersuasive, it is disingenuous. If plaintiff's counsel read the documents he cites in their entirety and in the context of the LRB file history, he could not reasonably conclude that they mean what he says they mean.

Plaintiff cites an August 6, 1974 letter from Robert E. Olsen, an assistant city attorney in Madison to the city attorney, Edwin C. Conrad, (on file with the LRB) for the proposition that a summons is always required. In this letter, Olsen discusses the law as it was in 1974 and recommends that it be amended. Indeed, the law was so amended in 1975, 1988 and 1992, as discussed above. In his brief, plaintiff's counsel fails to mention these amendments even though some were recommended by Olsen and followed directly on the heels of his letter. Instead, counsel quotes the letter at length as if it were an explanation of the present law. (R. 28 at 9; R. 44 at 7.)

Even more troubling is counsel's citation to a letter from J. Denis Moran, Director of State Courts, to James Fullin, Judicial Council Executive Secretary (Nov. 1, 1990) (on file with the LRB) for the proposition

that a citation provides insufficient process in municipal courts. The first paragraph of this letter expressly states that, under the current law, a citation alone *is sufficient* for actions in municipal courts. *Id.* at 1. The letter goes on to explain that in circuit courts, on the other hand, a citation is insufficient. *Id.* Counsel for the plaintiff ignores the statements about municipal courts and misleadingly quotes the portion of the letter that addresses only circuit courts as evidence of the rules in municipal courts. (R. 44 at 8.)

### ii. Due process does not require a summons.

■ Plaintiff further argues that even if state law does not require a summons, constitutional due process does. Due process requires,

> [N]otice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonably to convey the required information, and it must afford a reasonable time for those interested to make their appearance.

*Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314–15, 70 S.Ct. 652, 94 L.Ed. 865 (1950). The constitution does not prescribe the form of such notice. *See id.* Thus, it does not require a summons, as opposed to some other form of notice. At least one district court in this circuit has indicated that a citation system by itself can suffice. *Saukstelis v. City of Chicago,* No. 89–C–9268, 1990 WL 146711, at *6 (N.D.Ill. Oct. 3, 1990), *aff'd,* 932 F.2d 1171 (7th Cir.1991) (finding that plaintiffs had no reasonable likelihood of showing that traffic citations failed to provide notice adequate to satisfy due process).

Plaintiff argues that *Bomar v. Keyes,* 162 F.2d 136 (2d Cir.1947) supports the proposition that due process requires a summons. However, *Bomar* addresses whether a statute of limitations is tolled from the date of the filing of a complaint or of the service of the summons and complaint and is irrelevant to the issue before me. *Id.* at 138–41. Due process is never mentioned.

Finally, plaintiff points to Fed.R.Civ.P. 3 and 4, which require a summons for actions in federal court. However, the fact that the Federal Rules may require federal courts to issue summonses to initiate actions does not mean that due process imposes such a requirement on all courts. Thus, this argument is rejected as well.

### b. Can a municipal court incarcerate a defendant who fails to comply with a default judgment?

### i. State statutes allow incarceration.

Section 800.095 addresses municipal courts' procedures and remedies for enforcing their judgments and authorizes incarceration for non-compliance. Plaintiff makes the following argument as to why the statute does not authorize incarceration as a means of enforcing a default judgment: Section 800.095(4)(b) authorizes a municipal court to incarcerate a defendant who fails to appear in response to a warrant or summons issued pursuant to § 800.095(1). Section 800.095(1), in turn, authorizes a court to issue a warrant or summons when a defendant fails to "comply with the judgment of the court under s. 800.09(1)," which authorizes the court to enter judgment when it "finds a defendant guilty[ ]." Plaintiff argues that "find[ing] a defendant guilty" differs from a determination of guilt based on a plea of guilty or no contest or based on a failure to defend and that, therefore, if the defendant pleads or defaults, the procedures and remedies under § 800.095 for the enforcement of judgments may not be utilized.

■ Plaintiff's argument fails for several reasons. First, it is based on the false premise that if § 800.095 does not authorize his incarceration, then he cannot be incarcerated and, indeed, that municipal courts cannot enforce their own default judgments. However, all courts in Wisconsin have the inherent power to take actions to enforce their orders. *See State ex rel. V.J.H. v. C.A.B.,* 163 Wis.2d 833, 845, 472 N.W.2d 839 (Ct.App.1991). Municipal courts are no exception. *Kilgore,* 193 Wis.2d at 187, 532 N.W.2d 690. This "power exists as a necessary incident to the exercise of judicial power and is reasonably to be implied from the grant of such power." *See id.* Thus, because state law authorizes municipal courts to enter default judgments, Wis. Stat. § 800.04(2m), municipal courts can enforce them.

Second, analysis of the statutory language makes clear that § 800.095 authorizes the incarceration of defendants for non-compliance with default judgments. Section 800.09(1) authorizes a court to enter judgment after it "finds a defendant guilty." One of the meanings of "find," in a judicial context is to "determine and declare," *Webster's Third New International Dictionary of the English Language Unabridged* 852 (3d ed.1986), or "to pronounce as an official act," *Random House Webster's College Dictionary* 487 (2d ed.1997). So construed, "finds" would include any judgment rendered by a court, whether after a trial or by default. All are official pronouncements or declarations.

The titles of the subsections of § 800.09 also support this interpretation. *See Mireles v. Labor & Indus. Review Comm'n,* 237 Wis.2d 69, 93 n. 13, 613 N.W.2d 875 (2000) (stating that titles offer "persuasive evidence of statutory interpretation"). Subsection (1) is entitled simply "Judgment," indicating that it covers all judg-

ments, whether entered after a trial, after a plea or based on the defendant's default. Subsection (2), entitled "Judgment on plea of guilty or no contest for failure to appear" is, thus, better interpreted as addressing in more detail categories of judgments also covered by subsection (1).

Contrary to plaintiff's position, the language of § 800.09 and 800.095 does not indicate that § 800.095 applies only to judgments entered after trial. Subsection (1) of § 800.09 identifies the obligations to which payments received on a judgment are applied and in what order and outlines the procedures that may be used to obtain payments. Subsection (2)(a) provides for the entry of judgment after a plea of guilty or no contest; and subsection (2)(b) provides that when the defendant fails to appear, the court may summon him or her in order to determine if restitution should be ordered. Nothing in subsection (2) suggests that the way in which payments are applied and the enforcement remedies outlined in subsection (1) are inapplicable to judgments imposed under subsection (2). Section 800.095 sets forth in detail the steps that a municipal court must take and the options available to it when a defendant fails to comply with a judgment. It contains no language indicating that it only applies to judgments entered after trial.

Moreover, interpreting §§ 800.09(1) and § 800.095 as applying only to judgments after trial and not to default judgments, as plaintiff proposes, would be unreasonable. No section in chapter 800 or anywhere else discusses a municipal court's procedures and options for enforcing default judgments in particular. Thus, plaintiff's interpretation would mean that the Wisconsin legislature created no procedures for the enforcement of default judgments and, instead, left such procedures to the uncertainties of common law. This conclusion is unreasonable and made particularly un-

likely by the detail with which the legislature addressed the procedures for the enforcement of judgments under §§ 800.01(1) and 800.095. I must interpret statutes so as to "avoid unreasonable and absurd results." *See NCR Corp. v. Dep't of Revenue*, 128 Wis.2d 442, 456, 384 N.W.2d 355 (Ct.App.1986).

The legislative history confirms that § 800.095 authorizes municipal courts to order incarceration to enforce default judgments. Before the enactment of 1987 Wis. Act 389, which created §§ 800.09 and 800.095, municipal courts could jail defendants who failed to pay judgments, including judgments of default. Wis. Stat. § 800.09(1) (1977) (amended 1988); *see also Kilgore*, 193 Wis.2d at 184, 532 N.W.2d 690 (quoting *1987 Senate Bill 379, Analysis by the LRB* 2). 1987 Wis. Act 389 was intended to "add new procedures and options" for enforcement, not revoke existing options or create different procedures for default judgments. *See Kilgore*, 193 Wis.2d at 184, 532 N.W.2d 690 (internal quotation marks and citation omitted). Thus, the legislature intended that municipal courts would continue to have the power to incarcerate.

Further, the LRB analysis of the Senate bill that ultimately became 1987 Wis. Act 389 expressly discusses the provisions permitting default judgments and, only a few sentences later, discusses the provisions for enforcement of judgments without stating that the enforcement provisions do not apply to the type of judgments just discussed. *1987 Senate Bill 379, Analysis by the LRB* 2. The only logical interpretation of the LRB's analysis is that the enforcement provisions were intended to apply to default judgments.

Plaintiff offers no evidence in support of his position that "finds" is limited to a finding of guilty after trial or that the legislature intended for there to be an alternate system for enforcing default judgments. For the foregoing reasons, I conclude that §§ 800.09(1) and 800.095 encompass default judgments. Thus, a municipal court can under state law order a defendant incarcerated for failure to comply with a default judgment.

**ii. State law does not limit incarceration to failure to comply with judgments based on ordinances with statutory counterparts.**

■ Next plaintiff argues that even if the municipal court can jail defendants, that power only extends to violations of ordinances with statutory counterparts. In support of this argument, plaintiff points to the Historical and Statutory Notes for § 800.095 which state in part as follows:

> 1991 Act 40, § 23 provides: "Initial applicability: This act first applies to persons who, on the effective date [Jan. 1, 1992] of this Section, violate ordinances that prohibit conduct that is the same as or similar to conduct prohibited by state statute punishable by fine or imprisonment or both."

However, plaintiff misreads this language. 1991 Wis. Act 40 made several amendments and additions to chapters 66, 755 and 800, including adding new rules for proceedings involving violations of ordinances with statutory counterparts, and made several technical amendments to § 800.095. The language that plaintiff cites merely sets an effective date for those new provisions regarding statutory counterpart ordinances. It does not limit the substantive scope of § 800.095. Thus, plaintiff's argument is rejected.

**iii. Plaintiff's incarceration does not constitute imprisonment for nonpayment of a debt.**

■ Plaintiff also argues that his incarceration violates article I, § 16 of the Wis-

consin Constitution. This provision states, "No person shall be imprisoned for a debt arising out of or founded on a contract, express or implied." Plaintiff argues that "civil forfeitures are in the nature of a debt," (R. 28 at 28 (citing 49 Wis. Op. Att'y Gen. 22 (1960))); thus, incarceration for failure to pay a forfeiture violates this constitutional provision. However, plaintiff was not incarcerated because he owed a debt; he was incarcerated because he ignored the direct orders of a court. "[A] duty imposed by the court" is not a "debt" within the meaning of Wis. Const. art. I, § 16, even if it requires the payment of money. *O'Connor v. O'Connor*, 48 Wis.2d 535, 539, 180 N.W.2d 735 (1970); *see In re Milburn*, 59 Wis. 24, 17 N.W. 965 (1883). Thus, plaintiff does not state a claim for violation of Wis. Const. art. I, § 16.

### iv. Plaintiff's incarceration for failure to comply with court orders is not involuntary servitude or peonage.

■ Plaintiff also argues that his incarceration for failure to comply with a judgment of forfeiture constitutes involuntary servitude and peonage in violation of the Thirteenth Amendment and 18 U.S.C. §§ 241 and 1584. The Thirteenth Amendment states, "Neither slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. Plaintiff argues that he was not convicted of a crime; therefore, he could not be incarcerated.

Plaintiff's involuntary servitude claim is rejected because plaintiff's incarceration was not involuntary. Involuntary servitude exists where "the victim had no available choice but to work or be subject to legal sanction." *United States v. Kozminski*, 487 U.S. 931, 934, 108 S.Ct. 2751, 101

L.Ed.2d 788 (1988). Plaintiff in the case before me had other choices: He could have paid the forfeitures or demonstrated to the municipal court that he was financially unable to pay. *See* Wis. Stat. § 800.095(4)(a), (b). Indeed, had plaintiff shown that he was unable to pay, Judge Michelson could not have lawfully ordered his incarceration. *Id.* Rather than choose either of these routes and avoid jail, plaintiff chose to ignore the court's orders and warnings. Plaintiff's eventual imprisonment was, therefore, not involuntary.

■ Plaintiff's incarceration did not constitute peonage either. Peonage is a " 'condition of compulsory service, based upon the indebtedness of the peon to the master.... The peon can release himself, therefrom, ... by the payment of the debt, but otherwise the service is enforced.' " *United States v. Reynolds*, 235 U.S. 133, 144, 35 S.Ct. 86, 59 L.Ed. 162 (1914) (quoting *Clyatt v. United States*, 197 U.S. 207, 215, 25 S.Ct. 429, 49 L.Ed. 726 (1905)). Even assuming that the judgments against plaintiff are properly characterized as debts, plaintiff was not a "peon" because he could release himself not only by paying, but by showing that he could not afford to pay.

The facts of the cases that plaintiff cites are a far cry from the facts of the case before me. In *Kozminski*, the defendants, farm owners, forced two mentally retarded men to work without pay and live in "squalid conditions." 487 U.S. at 934, 108 S.Ct. 2751. The men were subjected to physical and verbal abuse and prevented from leaving. *Id.* at 395, 108 S.Ct. 2751. *Clyatt* concerned two men who were forcibly captured and transported to work for a man to whom they allegedly owed a debt. 197 U.S. at 223, 25 S.Ct. 429 (Harlan, J. concurring). In *Reynolds*, the Court struck down a criminal surety system under which a person fined for an offense

 

could contract to work for a surety who would then pay the convict's fine. 235 U.S. at 146–50, 35 S.Ct. 86. The convict's breach of the surety agreement was a crime. *Id.* at 146, 35 S.Ct. 86. Plaintiff, on the other hand, flouted the direct orders of a court and made no attempt to demonstrate that his incarceration was not permitted. Thus, he was eventually jailed only because of his own obstinance.

Furthermore, even if plaintiff's incarceration could be characterized as involuntary, the prohibition against involuntary servitude does not prevent governments "from compelling their citizens, by threat of criminal sanction, to perform certain civic duties." *See Kozminski,* 487 U.S. at 943–44, 108 S.Ct. 2751; *accord Hurtado v. United States,* 410 U.S. 578, 589 n. 11, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973) (upholding compulsory jury service); *Arver v. United States,* 245 U.S. 366, 390, 38 S.Ct. 159, 62 L.Ed. 349 (1918) (upholding compulsory military service); *Butler v. Perry,* 240 U.S. 328, 330–33, 36 S.Ct. 258, 60 L.Ed. 672 (1916) (upholding law compelling able-bodied men to perform road work); *Beltran v. Cohen,* 303 F.Supp. 889, 893 (N.D.Cal.1969) (upholding levy on wages to collect unpaid federal income taxes). Complying with court orders and judgments is a civic duty. Thus, forced labor or incarceration to compel compliance with these orders when one has not demonstrated that he or she is unable to comply is not prohibited by the Thirteenth Amendment.

## IV. CONCLUSION

For the forgoing reasons,

**IT IS ORDERED** that the case is **DISMISSED** for lack of subject matter jurisdiction. The clerk of court is instructed to enter judgment accordingly.

**IT IS FURTHER ORDERED** that in the event, my jurisdictional ruling is incorrect, defendants' motions to dismiss are **GRANTED**; and the case is **DISMISSED**.